IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAPA JOHN'S INTERNATIONAL, INC., a )
Delaware corporation, and PAPA JOHN'S )
FOOD SERVICE, INC., a Kentucky )
corporation, )
)
        Plaintiffs, )
)
vs. ) No. 04 C 3131
)
ANTOIN S. REZKO, an individual resident of )
Illinois, et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Papa John's International, Inc. and Papa John's Food Service, Inc. brought an action alleging trademark infringement in violation of the Trademark Act of 1946, copyright infringement in violation of the Copyright Act of 1976, trade secret misappropriation in violation of the Kentucky Uniform Trade Secrets Act, and breach of contract. The action stems from defendants' alleged non-performance and default on a series of franchise agreements and promissory notes. After defendants filed a motion to dismiss plaintiffs' second amended complaint and filed a number of counterclaims, plaintiffs filed this motion for sanctions under FED. R. CIV. P. 11 for defendants' alleged failure to make a reasonable inquiry into the fact and law underlying their filings. For the following reasons, we deny plaintiffs' motion for sanctions.

### BACKGROUND

Plaintiff Papa John's International, Inc. initially brought this action against defendants PJ Chicago, LLC, Chicago P.J., LLC, and East Coast PJ, LLC on May 3, 2004. Defendants counterclaimed and plaintiffs entered two amended complaints, adding Papa John's Food Service, Inc. as a plaintiff and Antoin Rezko as a defendant. Plaintiffs allege that defendants

illegally operated their restaurants under Papa John's registered trademarks, and used Papa John's registered copyrights, confidential operations manual, and other trade secrets, without paying royalties or other compensation to plaintiffs, and in violation of covenants not-to-compete. These actions allegedly took place both before and after plaintiffs were terminated as Papa John's franchisees on May 3, 2004.

On May 10, 2004, plaintiffs filed a motion for temporary restraining order or preliminary injunction. Ten days later the parties agreed to a partial resolution of that motion, wherein defendants agreed to immediate cessation of the use of plaintiffs' trademarks, confidential information regarding recipes and food products, promotional material and signs, and to display signs de-identifying their restaurants from Papa John's. On June 30, 2004, plaintiffs filed an emergency motion to show cause regarding the May 20, 2004, order. The hearing was set for August 5, 2004. Prior to the hearing, on August 4, 2004, the parties came to an agreement and entered into a written settlement agreement ("settlement agreement"). Within four months, both parties had entered motions to enforce the settlement agreement, plaintiffs filing on October 5, 2004, and defendants filing on November 23, 2004. By the middle of December 2004, settlement discussions were re-initiated. Ultimately, those settlement discussions were unsuccessful. On June 23, 2005, both parties withdrew their motions to enforce the August 4, 2004, settlement agreement – defendants' motion was withdrawn without prejudice.

On July 8, 2005, defendants filed counterclaims and moved to dismiss plaintiffs' second amended complaint, contending that "Papa John's conduct following the signing of the Settlement Agreement prevented Defendants from fully performing their obligations under the Settlement Agreement" (defs' response, ex. 2, ¶ 7). Specifically, defendants alleged that plaintiffs were unable to come to a franchise agreement with Dr. Paul Ray, a third party to

whom defendants were planning to sell their pizza stores, in large part because plaintiffs breached the terms of the settlement agreement. According to defendants, plaintiffs' "killed" the settlement agreement on May 6, 2005. Defendants' motion to dismiss plaintiffs' second amended complaint is predicated on the validity and enforceability of the settlement agreement.

On October 11, 2005, with defendants' motion to dismiss outstanding, plaintiffs made this motion for sanctions. Plaintiffs argue that defendants' motion to dismiss and second counterclaim violate Rule 11(b), which requires a party entering a court filing to make a reasonable inquiry into whether the allegations made therein have evidentiary support and are warranted by existing law or a non-frivolous argument for the alteration of the law. Plaintiffs contend that defendants' use of the settlement agreement is frivolous because it is no longer in effect, as shown through defendants' own statements. Defendants counter that the agreement is, in fact, in effect, and therefore their motion to dismiss and counterclaim are viable.

## DISCUSSION

Rule 11 requires that a signatory to a court document has "read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 542 (1991). Failure to comply with such requirements will result in the imposition of sanctions, pursuant to Rule 11(c).

Rule 11 was instituted to deter baseless filings and streamline the administration of the courts. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). And although sanctions may include payment of the other parties' expenses, in analyzing a motion for sanctions we are mindful of the rule's ultimate goal of deterrence. *Id. See also* Westfield Partners, Ltd. v.

Hogan, 744 F.Supp. 189, 193 (N.D.Ill.1990) ("Compensation, although an important consideration, is not the only purpose underlying Rule 11. An even more important purpose is deterrence").

Potential violation of Rule 11 is analyzed under a negligence standard and turns on whether the conduct was objectively reasonable. D'Aquino v. Citicorp/Diner's Club, Inc., 139 F.R.D. 357, 359 (N.D.Ill.1991) (*citing* Hays v. Sony Corp. of America, 847 F.2d 412, 418 (7th Cir.1988)). Therefore, an attorney's good faith is immaterial to the imposition of sanctions. *Id.*, at 360. What constitutes a reasonable inquiry is case-specific and "may depend on such factors as how much time was available for investigation, whether counsel had to rely on a client for information as to the facts or whether the filed papers were based on a plausible view of the law." *Id.*, at 360. In this case the defendants' use of the settlement agreement as the basis for their counterclaim and motion to dismiss requires us to consider whether the papers filed were based on a plausible view of the law. If the settlement agreement was clearly void and unenforceable, as plaintiffs contend, then defendants' reliance solely on the agreement would violate Rule 11. *See* In re Alberto, 119 B.R. 985, 992 (Bankr.N.D.Ill.1990) ("A pleading, motion, or paper is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known to the attorney or the party signing the filing") (*citing* Frazier v. Cast, 771 F.2d 259, 263-65 (7th Cir.1985)).

If, however, the settlement agreement may or may not have been enforceable, defendants' actions would not violate Rule 11. Because Rule 11 only requires that an argument be grounded in fact, analysis under Rule 11 is less stringent than analysis under FED. R. CIV. P. 12(b)(6). Just because a more fully developed record would indicate that the claim or argument is erroneous does not automatically translate to violation of Rule 11. Foster v. Michelin Tire Corp., 108 F.R.D. 412, 415-16 (C.D.Ill.1985). *See also* LaSalle Nat. Bank of

Chicago v. County of DuPage, 10 F.3d 1333, 1338 (7th Cir.1993) ("Because Rule 11 'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories,' an attorney need not advance a winning argument to avoid Rule 11 sanctions"); Rouhi v. Harza Engineering Co., 785 F.Supp. 1290, 1296 (N.D.Ill.1992) (where there is a plausible reading of the law that would support the party's filing, Rule 11 sanctions are not appropriate).

Plaintiffs contend that defendants knew the settlement agreement was null and void, and therefore their reliance on it should be subject to Rule 11 sanctions. They suggest that statements made by counsel at a December 15, 2004, status conference display defendants' knowledge that the agreement was not in effect. Plaintiffs argue that, at that conference defense counsel twice admitted that the settlement agreement was "a nullity" (plfs' motion at 7). The first statement by defense counsel, Mr. Murphy, reads: "I will have one brief comment, Judge. It is Rezko's position that the settlement agreement previously stated by counsel is not in full force and effect that if it was, in fact, breached ... as far as Rezko is concerned we do have a settlement conference in place as we stand here today" (defs' response, ex. 1, at 13:19-14:1). The second statement is plaintiffs' counsel, Mr. Lockerby, stating: "The contingency that I identified up-front is that if GE does not agree by 12:00 o'clock noon a week from today, December 22nd, 2004, then this agreement is null and void and the parties to the litigations, which do not include Dr. Ray, have an appointment with the Court on December 29th for a hearing that does not involve Dr. Ray" (id., at 15:2-8). Although that statement was made by plaintiffs' counsel, it was included to show that there was no dissent to that agreement from defense counsel. Plaintiffs also suggest that the withdrawal of defendants' motion to enforce the settlement agreement, withdrawn on June 23, 2005, indicates defendants' lack of confidence in the agreement.

Defendants respond that they "and their counsel never asserted that the Settlement Agreement dated August 4, 2004 has no binding effect and is a nullity. Rather, just as Papa John's did in its motion to enforce the Settlement Agreement, Defendants consistently maintained that there was and is a binding agreement that was breached by Papa John's" (defs' response at 2). Specifically, defendants contend that Mr. Murphy's comment was "prefatory" and could not be read to state that the agreement was a nullity, which was obvious since both parties had pending motions to enforce that agreement on the date of the status conference at issue (*id.*, at 2-3). In fact, defendants did not withdraw their motion to enforce the settlement agreement for another six months. Defendants also argue that Mr. Lockerby's statement referred only to an amendment to the agreement, "the failure [of which] did not abrogate the Settlement Agreement" (*id.*, at 3). As for the withdrawal of defendants' motion to enforce the agreement, defendants note that there was no stated reason for the withdrawal, and it was withdrawn without prejudice. Therefore, the withdrawal in no way signifies that the settlement agreement was void or unenforceable.

We cannot find that defendants have explicitly indicated that the August 4, 2004, settlement agreement is null and void. Reading the transcript of the status conference as a whole, defense counsel's statements did not assert that the agreement was a nullity. And the fact that the motions to enforce were still pending at the time of the statements works to support defendants' contention that neither party considered or stated that the agreement was invalid. Further, at that December 15, 2004, status conference, plaintiffs' counsel stated, "Papa John's and Rezko already signed a settlement agreement. And what we're doing now is agreeing to an amendment ..." (defs response, ex. 1, at 10:22-24). As we understood the conversation, the discussion regarded potential amendments to the settlement agreement, not the agreement as a whole. In fact, a reading of the full status conference transcript shows that the conference

took place to discuss "an offer by Papa John's to amend its preexisting settlement agreement with the Rezko codefendants ..." (defs' response, ex. 1 at 4:4-8), and to aid the parties in entering into an amended binding agreement (*id.*, at 12:12-19). Therefore, the December 15, 2004, statements do not necessarily evidence that defendants considered the settlement agreement a nullity. And, standing along, the withdrawal of the motion to enforce cannot be seen as a statement that the agreement is null and void.

Defendants may still be in violation of Rule 11 if there is no reading of the law that can be applied to give them a successful claim. A settlement agreement is a contract and, therefore, is governed by the principles of local law generally applied to contracts. D. Patrick, Inc. v. Ford Motor Co., 8 F.3d 455, 460 (7th Cir.1993); Laserage Technology Corp. v. Laserage Laboratories, Inc., 972 F.2d 799, 802 (7th Cir.1992).[1] In Kentucky, a party in material breach of a contract cannot enforce that contract. *See* Jewett v. Hertich, 2004 WL 1487105, *6 (Ky.App,Ct.2004); Williamson v. Ingram, 49 S.W.2d 1005, 1006 (Ky.App.Ct.1932). In this case both parties have asserted that the other is in breach of the settlement agreement. If it is true that defendants have breached the settlement agreement, they cannot assert the contract as the means by which to dismiss plaintiffs' second amended complaint.[2] We will not, however, address the merits of a breach of contract argument on this motion for sanctions under Rule 11. Although Rule 11 does impose a duty on parties and counsel to conduct reasonable inquiry into a claim or argument, "it was not intended to provide another level of pretrial review on the merits" of defendants' arguments. Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago, 121 F.R.D. 664, 671 (N.D.Ill.1988). Therefore, as there is clearly a debate over the enforceability

---

[1] Because the franchise agreement included a choice of law provision – "this agreement and all claims arising from the relationship between us and you will be governed by the law of the Commonwealth of Kentucky without regard to its conflict of laws principles" (second am. cplt, ex. B, at 1) – we turn to Kentucky law.

[2] We note that defendants adamantly argue that they have complied with the settlement agreement to the best of their abilities, hampered only by plaintiffs' action and inaction (*see* defs' response, ex. 2, at 2).

of, and the adherence to the settlement agreement, we will not address the merits of such a breach in determining this motion.

In the alternative, plaintiffs suggest that even if the settlement agreement is valid and enforceable, it cannot serve as a valid basis for a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) (plfs' reply at 5). Plaintiffs cite Yattoni v. Oakbrook Terrace, 1991 U.S. Dist. LEXIS 10423 (N.D.Ill.1991), and the court's statement that a party cannot assert allegations outside of the complaint in a motion for dismissal pursuant to Rule 12(b)(6). It is true that in a 12(b)(6) analysis, arguments and documents attached to a defendant's pleadings cannot be considered without converting the motion to dismiss to a motion for summary judgment, with the exception of documents referred to in the plaintiff's complaint and central to the claim. Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1248 (7th Cir.1994); Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). Therefore, we must inquire as to whether the settlement agreement falls into the exceptions as designated by the Seventh Circuit.

Plaintiffs do not attach the settlement agreement to the complaint, nor does the complaint make mention of it. And because the settlement agreement is essentially a release of liability, which is an affirmative defense under FED. R. CIV. P. 8(c), it appears that the agreement is not an appropriate basis for a motion to dismiss under Rule 12(b)(6). *See* United States v. Lewis, 411 F.3d 838, 842 (7th Cir.2005) (it was premature to grant a motion to dismiss based on an affirmative defense, unless the allegations of the complaint set forth everything necessary to satisfy the affirmative defense); Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir.2004). Other courts, however, have found that the presence of a settlement agreement or liability release is appropriately considered on a motion to dismiss, even where the plaintiff did not attach it to his complaint. *See* Stiegmeier v. Northwestern

Growth Corp., 2000 WL 1670931, *2 (S.D.N.Y.2000) (considered a settlement agreement on a motion to dismiss where a related document was referred to in the complaint, the parties had notice of both documents, and the documents were integral to his claims); <u>Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.</u>, 1998 WL 30069, *3 (N.D.Cal.1998) ("while the interim settlement agreement may not be 'central' to the substantive issues in Corroon's complaint, it clearly is central to Corroon's ability to bring this action since the agreement is a binding contract which allegedly limits the parties' right to sue. The agreement is therefore centrally relevant – and potentially dispositive – in the same way that facts indicating the existence of a statute of limitations or res judicata would be"). *See also* <u>Ficke v. Johns</u>, 1996 WL 99424 (N.D.Ill.1996) (in addition to a reference to the release in the complaint, the release was "clearly central to plaintiff's allegations in that a determination of the Release's validity affects whether or not this action may proceed").

As indicated above, there are conflicting views as to whether a settlement agreement – central to the claim's viability, but nowhere mentioned in the complaint – should be considered on a motion to dismiss. Therefore, we find that the use of such a document is not so clearly objectionable as to require the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, we deny plaintiffs' motion for sanction under Rule 11.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

March 3, 2006.