IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAPA JOHN'S INTERNATIONAL, INC., a )
Delaware corporation, and PAPA JOHN'S )
FOOD SERVICE, INC., a Kentucky )
corporation, )
)
                Plaintiffs, )
)
      vs. )      No. 04 C 3131
)
ANTOIN S. REZKO, an individual resident of )
Illinois, et al., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Papa John's International, Inc. and P.J. Food Service, Inc. brought an action against PJ Chicago, LLC, Chicago P.J., LLC, East Coast PJ, LLC, and Atonin Rezko, alleging trademark infringement in violation of the Trademark Act of 1946, copyright infringement in violation of the Copyright Act of 1976, trade secret misappropriation in violation of the Kentucky Uniform Trade Secrets Act, and breach of contract stemming from defendants' alleged non-performance and default on a series of franchise agreements and promissory notes. Defendants asserted three counterclaims: declaratory judgment seeking invalidation of non-compete covenants included in the franchise and owner agreements, breach of contract with regard to a settlement agreement between the parties, and intentional interference with prospective economic advantage. Plaintiffs thereafter filed this motion to dismiss defendants' counterclaims. For the reasons stated below, we deny in part plaintiffs' motion to dismiss.[1]

---

[1] Rather than adopting the language of counter-plaintiffs and counter-defendants, we refer to the parties in the roles they play in the initial complaint. Therefore, the counterclaims are by defendants and plaintiff has requested dismissal.

## BACKGROUND

As a motion to dismiss a counterclaim under FED. R. CIV. P. 12(b)(6) is treated the same as a motion to dismiss a complaint (Syndia Corp. v. Gillette Co., 2002 WL 548843, *1 (N.D.Ill.2002)), we must accept the defendants' well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005). The counterclaims should be dismissed only if the defendants "failed to allege any set of facts upon which relief may be granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Therefore, we take the following facts from the defendants' counterclaim allegations.

Between 1998 and 2002, defendants entered into franchise agreements with plaintiffs to open Papa John's franchise stores in Illinois and Michigan. As sole shareholder of PJ Chicago, LLC, Chicago P.J., LLC, and East Coast PJ, LLC, Rezko personally signed each of the franchise and owner agreements. A covenant not-to-compete was included in the franchise agreements. The provision reads:

> (c) You covenant and agree that during the Term of this Agreement (including the Renewal Term, if applicable) and for a period of two years after the termination or expiration of the Franchise (the 'Restricted Period'), regardless of the reason for such termination or expiration, you shall not, within a 10-mile radius of (A) the Restaurant, or (B) any business location at which we or an Affiliate or our franchisee then conducts a Papa John's business, engage in any of the following activities:
>
>> (i) directly or indirectly enter into the employ of, or render any service to or act in concert with any person, partnership, limited liability company, corporation or other entity that owns, operates, manages, franchises or licenses any business that (A) sells pizza or other non-pizza products (excluding soft drinks) that are the same as those sold by Papa John's restaurants on a delivery or carry-out basis, including, without limitation, business formats such as Domino's, Pizza Hut, Mr. Gatti's, Sbarro and Little Caesars, or (B) derives 20% or more of its gross revenues, at the retail level, from the sale of pre-cooked,

>    ready-to-eat food products on a delivery basis (a 'Competitive Business'), or
>
>    (ii) directly or indirectly engage in any such Competitive Business on your own account, or
>
>    (iii) become interested in any such Competitive Business directly or indirectly as an individual, partner, member, shareholder, director, officer, principal, agent, employee, consultant or in any other relationship or capacity; provided, that the purchase of a publicly traded security of a corporation engaged in such business or service shall not in itself be deemed violative of this Section so long as you do not own, directly or indirectly, more than 1% of the securities of such corporation.

(Counterclaims, exh. A, ¶16(c)).

Additionally, under the terms of the Franchise Agreement, the Restricted Period was to be tolled "[d]uring any period in which any covenant in Section 16 or 17 is being breached by you, including any period in which we or you are seeking administrative or judicial enforcement, interpretation or modification of any such covenant, and all appeals thereof..." (*id.*, exh. A, ¶¶16(c)(iii), 25(a)). An identical covenant not-to-compete is found in the owner agreement (*id.*, exh. B, ¶2(a)), wherein the contract signatory also agreed that the "covenants and agreements contained in Section 2 are, taken as a whole, reasonable with respect to the activities covered and their geographic scope and duration, and no party shall raise any issue of the reasonableness of the areas, activities or duration of any such covenants in any proceeding to enforce any covenants" (*id.*, exh. B at ¶2(f)).

During the course of this dispute, defendants were forced to close all 37 of their franchised pizza stores, triggering the post-termination covenants not-to-compete. Subsequently-filed litigation triggered the tolling provision. Because the covenants not-to-compete would allegedly "prohibit Rezko from engaging in his business of ready-to-eat pizza stores and restaurants in approximately two thousand of the largest cities and most populous areas around the country for two years" (*id.*, at 12), and includes "any business that sells other

products which Papa John's sells (other than soft drinks)[, which] include[] breaded chicken strips, chicken wings, bread sticks and other items, and even a whole host of dipping sauces from ranch to barbeque" (*id.*, at 14), defendants assert that the covenants not-to-compete are unreasonable and unenforceable.

During the course of this litigation the parties have several times attempted to engage in settlement discussions. On August 4, 2004, all of the parties signed a Settlement Agreement and Mutual Release, acknowledging that defendants would sell their interest in the former Papa John's franchises to Dr. Paul Ray (*id.*, exh. D, ¶4), and making plaintiff's release of liability contingent on the receipt of the established payments and the sale to Ray (*id.*, exh. D, ¶12(b)). The agreement also contains a provision stating that the "Rezko Defendants acknowledge that the Post-Term Covenant Not to Compete, set forth in the Franchise Agreements at paragraph 16(c), is valid and enforceable" (*id.*, exh. D, ¶3).

Because plaintiffs and Ray were unable to agree on a franchise contract, defendants were unable to sell their franchise restaurants to Ray. And, therefore, the parties never closed on the settlement. Defendants contend that plaintiffs never intended to allow Ray to operate the stores and exercised bad faith with regard to the negotiations. Defendants further contend that such actions breached the implied covenant of good faith and fair dealing implicit in the settlement agreement. Allegedly because of plaintiffs' actions, defendants have been unable to sell their franchises and have accrued significant financial damages.

## DISCUSSION

As we did in our previous opinion in this case, because the franchise agreement and settlement agreement contain choice-of-law provisions, we turn to Kentucky law for our analysis. *See* Papa John's Int'l, Inc. v. Rezko, 2006 WL 566468, *4, n1 (N.D.Ill. 2006) ("Papa John's I").

Covenants Not-to-Compete

Defendants claim that the covenants not-to-compete – included in the franchise, owner, and settlement agreements – were non-negotiable, over-broad, and unreasonable. In Kentucky, the courts have recognized that covenants not-to-compete "'play a critical role in business and are favored as long as they are reasonable in geographic scope and duration.'" Gardner Denver Drum LLC v. Goodier, 2006 WL 1005161, *4 (W.D.Ky. 2006) (citing Managed Health Care Assocs. v. Kethan, 209 F.3d 923, 928 (6th Cir. 2000)).

Generally courts have dealt with covenants not-to-compete found either in employment contracts or contracts for the sale or acquisition of a business, giving covenants ancillary to the sale of a business greater deference as to reasonableness. Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 600 (9th Cir.1991); Hall v. Willard and Woolsey, P.S.C., 471 S.W.2d 316, 318 (Ky.1971). In this case, however, we are facing a slightly different situation – a covenant not-to-compete found in a franchise agreement. As Kentucky courts have not yet construed such covenants, we look to other jurisdictions for guidance. Although a franchise falls somewhere between an employment relationship and the sale of a business, most courts have applied an employment standard when considering such restrictive covenants. See Watson v. Waffle House, Inc., 324 S.E.2d 175, 177 (Ga.1985); Armstrong v. Taco Time Int'l, Inc., 635 P.2d 1114, 1117 (Wash.Ct.App. 1981); Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 212 (Pa.1976); H & R Block, Inc. v. Lovelace, 493 P.2d 205 (Kan. 1972).[2] But see In re KBAR, Inc., 96 B.R. 158, 160 (C.D.Ill. 1988) (finding that a franchise relationship most closely resembles a license relationship, and therefore, applying the standard

---

[2] The court in Lovelace defined a franchise: "In its simplest terms a franchise is a license from the owner of a trademark or trade name permitting another name or mark. More broadly stated, the franchise has evolved into an elaborate agreement under which the franchisee undertakes to conduct a business or sell a product or service in accordance with methods and procedures prescribed by the franchisor and the franchisor undertakes to assist the franchisee through advertising, promotion and other advisory services." 493 P.2d at 211-212.

for a licensor-licensee relationship). While keeping in mind the hybrid nature of a franchise relationship, we adopt an employment standard for assessing the restrictive covenants at hand.

In determining the reasonableness of an employment covenant not-to-compete, the Kentucky Supreme Court has held that "'the test of reasonableness is whether the restraint, considering the particular situation and circumstances, is such only as to afford fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public.'" Gardner Denver Drum LLC v. Goodier, 2006 WL 1005161, *4 (W.D.Ky. 2006) (citing Stiles v. Reda, 228 S.W.2d 455, 456 (Ky. 1950)). Courts have specifically analyzed the reasonableness of the duration, the geographic scope, and the substantive restraints of the covenants (id., at *8-*9). While unreasonable application of any one of those areas may make the entire covenant unreasonable, Kentucky courts can restrict the covenant to a reasonable duration or scope and enforce it only to that extent. See, e.g., Hammons v. Big Sandy Claims Service, Inc., 567 S.W.2d 313, 315 (Ky.Ct.App. 1978).

First, we note that two years is not an unreasonable length of time in this kind of covenant not-to-compete. See Gardner Denver Drum LLC, 2006 WL 1005161 at *8 (cataloguing reasonable employment restrictive covenants ranging from eighteen months to ten years). Because franchisees are privy to important business information, trade secrets, and sales techniques, we hold that a two-year trade restriction is reasonable. See id. We do note, however, that the tolling provision was triggered on the day franchise termination notices were sent and this suit was filed. Therefore, the covenant-not-to-compete is still in effect more than two years after its initiation. Although we make no determination as to the reasonableness of the tolling provision, the litigation shows no signs of an imminent end, and we will consider the extended duration of the non-compete as a factor in assessing its reasonableness.

It is the scope of protected activities and the geographic restrictions imposed by the

covenants that give us pause. Because the covenants restrict defendants from engaging in any post-term activities that may compete with plaintiffs, defendants argue that the covenants are unreasonably broad. Kentucky courts have held that a covenant prohibiting a former employee from obtaining a position with a competitor "in any capacity" was over-broad and unreasonable (*id.*, at *9). Other courts have made similar findings. BJM & Associates, Inc. v. Norrell Services, Inc., 855 F.Supp. 1481, 1498 (E.D.Ky. 1994) (construing Georgia law); Preferred Research, Inc. v. Reeve, 357 S.E.2d 489, 490 (S.C.Ct.App. 1987); T.V.Tempo, Inc. v. T.V. Venture, Inc., 262 S.E.2d 54, 56 (Ga.1979). And while the covenant at issue here does not use the language "in any capacity," based on the facts and circumstances of the case, it may effectively limit defendants from competing with plaintiff almost to that extent. Additionally, although plaintiffs claim that the scope of restricted activities under the non-compete clause is "narrowly limited to business activities that are in direct competition with Papa John's" (defs' mem. at 9), it is unclear what exactly the provision covers. If defendants are correct – that the provision covers the sale of something as commonly sold as ranch or barbeque sauce – it may be difficult to classify such restrictions as "narrowly limited."

In a franchise case similar to the one at issue here, however, the Georgia Supreme Court broke from Georgia precedent in finding that a prohibition against engaging in the restaurant or fast food business was reasonable where the plaintiff franchisees were involved in every facet of the franchisor's business, and franchisor had a reasonable stake in protecting company knowledge. Watson, 324 S.E.2d 175. The Watson court looked at the restrictive covenant in its entirety, specifically noting the limited duration (two years) and limited scope (five miles from the site of plaintiff's franchise), and held that under the circumstances the restraint was not unreasonable.

In this case, while the duration may be reasonable, the extensive geographic

restrictions, considered along with the prohibited activities, may make the covenants unreasonable[3]. The covenants prohibit defendants from engaging in the prohibited activities within a ten-mile radius of the defendants' franchised restaurants and "any business location at which [plaintiffs] or an Affiliate or our franchisee then conducts a Papa John's business." (Counterclaims, exh. 1, ¶16(c)). Where a business is highly specialized and the firms compete nationally for a finite amount of business, courts have upheld covenants restricted to wherever nationally they are in direct competition. Gardner Denver Drum LLC, 2006 WL 1005161 at *8; Central Adjustment Bureau, Inc. v. Ingram Associates, Inc., 622 S.W.2d 681, 686 (Ky.Ct.App. 1981). Where, however, a business generally seeks and obtains customers locally, a restrictive covenant with no territorial limitation has been found unreasonable. *See* Lovelace, 493 P.2d at 212. *But see* Grow Biz Int'l, Inc. v. MNO, Inc., 2002 WL 113849 (D.Minn. 2002) (finding that a restrictive covenant limiting competition within six miles of any franchise is likely to be upheld under North Carolina law). In this case the defendants have plead that the geographic limitations contained in the covenants-not-to-compete would prevent them from engaging in restricted business in two thousand cities around the country. Such a limitation may be over-broad as it effectively limits defendants' activities both in any region where they may have developed a positive reputation (Illinois and Michigan), and thousands of other locations, even where defendants would have no advantage stemming from their status as former Papa John's franchisees. Although we make no factual determinations at this stage, because Papa John's is a national franchise and each franchise caters to and serves local customers, the geographical limitations may be too burdensome to protect plaintiff's interests.

"Reasonableness is to be determined generally by the nature of the business or

---

[3] Plaintiffs' argument that defendants waived any objection to the non-compete clause by signing the August 4, 2004 settlement agreement, must fail. Parties to a contract cannot waive their objections to unconscionability, especially where one party enters into negotiations with unequal bargaining power.

profession and employment." Crowell v. Woodruff, 245 S.W.2d 447, 449 (Ky.1952). In other scenarios, the question of "reasonableness" or "commercial reasonableness" has generally been a question of fact, not a question of law. *See* McCoy v. American Fidelity Bank & Trust Co., 715 S.W.2d 228, 230 (Ky.1986) (Under the Uniform Commercial Code, "as a general rule the question of what is 'commercially reasonable' is a question of fact, not a question of law"); Walker v. Duba, 161 S.W.3d 348, 349 (Ky.App.Ct. 2004) (under the "common enemy" doctrine of land use, the "reasonableness of a land owner's actions is an issue of fact"); Corum v. Fifth Third Bancorp, 2003 WL 21672828, *1 (W.D.Ky. 2003) (the reasonableness of late fees under the federal Consumer Leasing Act is a factual determination). And at least one Kentucky court has held the same with regard to restrictive covenants. *See* Hodges v. Todd, 698 S.W.2d 317 (Ky.Ct.App. 1985) (reversing trial court's determination that the restrictive covenants were unreasonable as a matter of law, and remanding the action with directions to conduct a hearing to determine what would constitute a reasonable geographic limitation). Taking the restrictive covenants as a whole, we find that the prohibitions could be over-broad and unenforceable. Therefore, we allow defendants' declaratory judgment claim to continue so as to establish the specific circumstances of the case with respect to the restrictive covenants.

Breach of Contract

Defendants attempt to state a claim for breach of contract based on violations of the implicit duty of good faith and fair dealing. Specifically, defendants contend that the August 4, 2004, settlement agreement stated that defendants would sell their franchise restaurants to Ray. The sale could not be accomplished, however, until Ray came to a franchise agreement with plaintiffs. Defendants contend, therefore, that by refusing to engage in good faith negotiations with Ray for the establishment of franchise agreements, plaintiffs are liable to defendants for breach of the August 4, 2004, settlement agreement. Plaintiffs' response

contends that the parties never came to a meeting of the minds regarding the settlement agreement – the settlement agreement was never enforceable and therefore there was no duty of good faith and fair dealing.

We must take stock of what has happened so far in this case regarding the settlement agreement. The parties reached a settlement agreement on August 4, 2004, that required defendants to cease operating any and all pizza restaurants and to pay set fees in exchange for plaintiffs' general release of any claims against defendants. The agreement acknowledged an anticipated sale of the defendants' franchise restaurants to Ray, a non-party to the settlement agreement. The relevant provision stated:

> On or before the Settlement Date, the Rezko Defendants agree that they will cease operating any and all pizza restaurants, including the former Papa John's franchise restaurants in the State of Illinois and the State of Michigan. The Rezko Defendants agree that they shall sell their interest in the former Papa John's franchise restaurants in the State of Illinois to be operated as Papa John's restaurants ('Illinois Restaurants') to Paul Ray ('Ray') or an entity owned by him and shall permanently cease operation of all other pizza operations, including the former Papa John's franchise restaurants in the State of Michigan. The Rezko Defendants further agree that they shall have no continuing active involvement in the operation or ownership of any pizzas restaurants and shall abide by the terms of the Post-Term Covenant Not to Compete as set forth in Section 3 above.

(Counterclaims, exh. D, ¶ 4).

As is clear from the language above, the August 4, 2004, settlement agreement provision describing the anticipated sale to Ray does not mention plaintiffs' responsibility in the sale. It sets forth neither the terms of plaintiffs' negotiation nor a time frame. Even the defendants recognize that "the Settlement was silent as to the terms of the franchise agreement to be formed between Ray and PJ International to govern the pizza stores Ray would purchase from the [defendants]." (Counterclaims, ¶ 31). Ray was not a party to the August 4, 2004, settlement agreement.

It is our understanding that there was a settlement agreement in place on August 4,

2004. Because it did not sufficiently set forth the terms of the sale of the franchise restaurants to Ray, the parties, including Ray, met on December 15, 2004, to amend the agreement to clarify the responsibilities with respect to that sale. Because a condition precedent (consent of G.E. Commercial Finance), however, did not come to pass, the December 15, 2004, amendment to the settlement agreement never went into effect.

In Kentucky, a party asserting a breach of contract action must plead and prove "'the existence and the breach of a contractually imposed duty.'" Abney v. Amgen, Inc., 443 F.3d 540, 547 (6th Cir.2006) (*citing* Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001)). In order to show the existence of a contractually imposed duty, the party asserting the breach of contract claim must show that there has been a "meeting of the minds" as to the terms of the contract. Bajrovic v. Bosnia House, L.L.C., 2006 WL 278306, *2 (W.D.Ky. 2006). And although at least one Kentucky court has held that all that is required is a "manifestation of intention" (Hatfield v. Blair, 2006 WL 572922, *2 (Ky.Ct.App. 2006)), we think that, at least with regard to plaintiffs' role in the defendants' sale of their franchise restaurants to Ray, on August 4, 2004, the parties came neither to a meeting of the minds nor to a manifestation of intention. While they may have come closer on December 15, 2004, the failure of a condition precedent voided the contract – here, the amendment to the August 4, 2004, settlement agreement. *See* Myatt v. Myatt, 2004 WL 2634172, *4 (Ky.Ct.App. 2004) (*citing* In re Big Rivers Electric Corp., 233 B.R. 726 (Bkrtcy.W.D.Ky. 1998)).

Even assuming that the rest of the August 4, 2004, settlement agreement was valid and enforceable, the parties did not come to a meeting of the minds regarding the sale of the Rezko franchises to Ray. Therefore, plaintiffs did not breach a duty to defendants and we dismiss

defendants' breach-of-contract counterclaim.[4]

Tortious Interference with Prospective Economic Advantage

In Illinois, to succeed on a claim of tortious interference with prospective business advantage, defendants must show "'(1) a reasonable expectancy of entering into a valid business relationship, (2) the [plaintiff's] knowledge of the expectancy, (3) an intentional and unjustified interference by the [plaintiff] that induced or caused a breach or termination of the expectancy, and (4) damage to the [defendants] resulting from the [plaintiff's] interference.'" Evans v. City of Chicago, 434 F.3d 916, 929 (7th Cir. 2006) (citing Anderson v. Vanden Dorpel, 667 N.E.2d 1296 (Ill. 1996)). Defendants argue that they adequately allege all of the necessary elements, specifically that "(i) Defendants had a reasonable expectation of a valid business relationship with a Dr. Ray and Newco[,] (ii) Plaintiffs knew of that prospective business relationship, (iii) Plaintiffs intentionally and without justification interfered with the closing of the prospective business relationship, such that the sale could not close, and (iv) Plaintiffs' interference caused damages to Defendants in excess of $2,000,000." (defs' response at 8).

We agree that defendants adequately pled the first, second, and fourth prongs of the tort. Defendants set forth sufficient facts that they had a reasonable expectation of a valid business relationship with Ray and Newco. See Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp., 2002 WL 31207324, *3 (N.D.Ill. 2002); Quadro Enterprises, Inc. v. Avery Dennison Corp., 1999 WL 759488, *7 (N.D.Ill. 1999). Defendants also sufficiently pled the second prong of the tort. By its inclusion in the settlement agreement signed by both parties

---

[4] Defendants intimate that this court's findings with regard to plaintiffs' motion for sanctions, memorialized in Papa John's I, determines that the August 4, 2004, settlement agreement was valid and binding. We disagree. In that order we found that statements made by defendants at the December 15, 2004, status conference did "not necessarily evidence that defendants considered the settlement agreement a nullity." Id., at *4. Rather, consistent with our opinion here, we found that the parties met on December 15, 2004, to discuss an amendment to the August 4, 2004, settlement agreement.

to this action, it is clear that plaintiffs were aware of defendants' anticipated business relationship with Ray.

The third prong – that plaintiffs intentionally and without justification interfered with the business relationship between defendants and Ray – is a more difficult question. We read defendants' complaint to assert a claim based on the plaintiffs' refusal to enter into a franchise agreement with Ray, which ultimately precluded the consummation of a business deal between defendants and Ray. Plaintiffs, however, contend that "[e]ven if the August 4, 2004 Settlement Agreement had been enforceable..., no contract could require Papa John's to enter into a franchise agreement with Dr. Ray on unfavorable terms simply to benefit the Rezko Defendants" (plf's reply at 9). Asserting what appears to be a privilege to choose with whom to do business, plaintiffs point to the Fifth Circuit's language in Davenport v. St Paul Fire & Marine Ins. Co., 978 F.2d 927, 933 (5th Cir.1992), which states that "the right to enter or refuse to enter into contractual relations, may be exercised without liability for interference without reference to one's motive as to any injury directly resulting therefrom." Plaintiffs may be correct that they have a privilege to contract with or refuse to contract with whomever they choose. Plaintiffs cannot raise such a privilege, however, at this stage in the litigation. See P.H. Int'l Trading Co. V. Christia Confezioni S.p.A., 2005 WL 2420377, *12 (N.D.Ill. 2005); Quadro Enterprises, Inc., 1999 WL 759488 at *7-8.

Furthermore, as noted in Quadro, an allegation that the defendant "maliciously sought to ensure that [third party] never worked with [plaintiff] again," could not "be characterized as good faith action to protect [defendant's] interests, and would put [defendant's] actions beyond the scope of the privilege." 1999 WL 759488, *8. Similar claims are alleged here. Thus, although we make no comment on the strength of the merits, we find that defendants' counterclaim for tortious interference with prospective economic advantage may proceed.

## CONCLUSION

For the foregoing reasons, we grant plaintiffs' motion to dismiss defendants' counterclaim for breach of contract. We deny plaintiffs' motion to dismiss defendants' counterclaim for declaratory judgment regarding the covenants not-to-compete and intentional interference with prospective business advantage.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

June 14, 2006.