

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAPA JOHN'S INTERNATIONAL, INC., a )
Delaware corporation, and PAPA JOHN'S )
FOOD SERVICE, INC., a Kentucky )
corporation, )
)
          Plaintiffs, )
)
vs. ) No. 04 C 3131
)
ANTOIN S. REZKO, an individual resident of )
Illinois, et al., )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Papa John's International, Inc. and P.J. Food Service, Inc. brought an action against PJ Chicago, LLC, Chicago P.J., LLC, East Coast PJ, LLC, and Atonin Rezko, alleging trademark infringement in violation of the Trademark Act of 1946, copyright infringement in violation of the Copyright Act of 1976, trade secret misappropriation in violation of the Kentucky Uniform Trade Secrets Act, and breach of contract stemming from defendants' alleged non-performance and default on a series of franchise agreements and promissory notes. After plaintiffs filed a second amended complaint on July 14, 2004, defendants brought a motion to dismiss, basing their claims on the Settlement Agreement the parties entered into on August 4, 2004.[1] Subsequently, defendants filed a supplemental motion to dismiss, arguing that plaintiffs' claims were insufficient to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). For the reasons stated below, we deny defendants' motion to dismiss and grant in part and deny in part defendants' supplemental motion to dismiss.

---

[1] The enforceability of the August 4, 2004, settlement agreement has been a major point of contention in this litigation. For more information, see Papa John's Int'l. v. Rezko, 2006 WL 566468 (N.D.Ill.2006) ("Papa John's I") and Papa John's Int'l v. Rezko, 2006 WL 1697134 (N.D.Ill.2006) ("Papa John's II").

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6), we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005). The complaint will be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Therefore, we take the following facts from the plaintiffs' complaint.

Plaintiffs allege that defendants, former franchisees operating Papa John's restaurants in Illinois and Michigan, continued to use the Papa John's trademarks, trade secrets, and copyrighted or otherwise proprietary materials, in the wake of termination of the franchises. Additionally, defendants allegedly continued to operate pizza restaurants, renamed "Pizza Tony's," in the same location as the formerly franchised restaurants. Plaintiffs contend that such actions constitute counterfeiting, infringement, unfair competition and trademark dilution in violation of the Lanham Act; copyright infringement in violation of the Copyright Act of 1976; misappropriation of trade secrets in violation of the Kentucky Uniform Trade Secrets Act; and breach of contract, including breach of the post-term covenants not-to-compete.

Papa John's, including its predecessors-in-interest, have used the Papa John's marks since 1981 to identify and promote its products, including 18 marks federally registered with the Patent and Trademark Office. Papa John's also owns 18 federal copyright registrations for commercials, computer programs, operations checklists, reviews, and reports. Using those identifying processes and marketing techniques, Papa John's has established its business throughout the world, with 80 percent of their 3,000 restaurants operated as franchises.

From 1998 to 2002, defendant Rezko, chief executive officer and sole shareholder of defendants PJ Chicago, Chicago P.J., and East Coast PJ, entered into franchise agreements with Papa John's to open 38 restaurants. The franchise agreements required that the restaurants be operated according to Papa John's standards, specifications, and policies, including use of certain food and food items, payment of royalties, maintenance of insurance, covenants not-to-compete, and obligations to refrain from using trade secrets, confidential information and proprietary knowledge gained during the course of business. Provisions also included post-termination obligations, including immediate cessation of business operation and confidential information, immediate return of Papa John's property and cancellation of any assumed name or similar registration containing Papa John's trademarks.

Based on defendants' alleged failure to acquire appropriate insurance coverage and failure to fulfill their financial obligations to Papa John's and creditors, on May 3, 2004, Papa John's sent defendants notices of termination. The notices included directives to the former franchisees to cease operation of the franchised restaurants, refrain from holding out the franchises as Papa John's restaurants, and to comply with the post-termination obligations contained in the franchise agreements. Additionally, the notices required defendants, by the close of business day, to cover Papa John's signage, post signage in the restaurants stating its disaffiliation with Papa John's, and answer the phone in a manner that would not identify the restaurant as a Papa John's affiliate. According to plaintiffs, "[t]he Former Franchisees have continued to use, without authorization, all or some of the PAPA JOHN'S Marks and Papa John's Registered Copyrights, as well as other elements of the Papa John's System after May 3, 2004" (cplt., ¶39). Additionally, plaintiffs claim that harm to them has been exacerbated by plaintiff's continued operation of the restaurants under the name "Papa Tony's."

## DISCUSSION

Defendants' original motion to dismiss proceeds on the theory that "[b]ecause the [August 4, 2004] settlement agreement released all claims between Papa John's and Defendants, the Complaint fails to state a claim upon which relief can be granted" (defs' mo. to dis., ¶14). As stated in Papa John's II, however, the settlement agreement, at least with regard to the sale of the franchise restaurants to third party Dr. Ray, was unenforceable for failure to come to a "meeting of the minds." Papa John's II, 2006 WL 1697134. Therefore, we deny defendants' motion to dismiss.

Plaintiffs' supplemental motion to dismiss argues that plaintiffs have failed to state a claim upon which relief can be granted under Rule 12(b)(6). Specifically, defendants argue that plaintiffs have failed to plead any viable federal claims and therefore the entire action must be dismissed.

### Defendant Rezko

Defendants claim that all infringement claims against defendant Rezko must be dismissed because plaintiffs have failed to allege any facts establishing his personal liability. In general, "in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction." Dangler v. Imperial Mach. Co., 11 F.2d 945, 947 (7th Cir.1926). Such a "special showing" generally requires evidence of the officer's personal involvement in the infringement. See Syscon, Inc. v. Vehicle Valuation Services, Inc., 274 F.Supp.2d 975, 976 (N.D.Ill.2003); Peaceable Planet, Inc. v. TY, Inc., 185 F.Supp.2d 893, 896 (N.D.Ill.2002) (A plaintiff fails to "meet the 'special showing' requirement when the individual defendant has done nothing beyond the scope of his duties as officer and the corporation 'was not organized to permit [the individual defendant] to profit from infringement or hide his personal liability under a

corporate shell' so that the alleged infringement was not willful.'").

When an officer signs a contract as an agent of his corporation, he risks no personal liability. *See* Dugan v. Petty, 1993 WL 317260, *2 (N.D.Ill.1993). When a corporate officer makes a personal promise to guarantee his corporation's debts, however, he may be held liable in his personal capacity. Western Cas. & Sur. Co. v. Bauman Ins. Agency, Inc., 401 N.E.2d 614, 616 (Ill.App.Ct.1980) ("An agent may expressly agree to be personally bound or it may be inferred by implication reasonably drawn from all the facts and circumstances in evidence"). Plaintiffs plead the latter, that by signing the owner agreement "Rezko agreed to be personally liable for Defendants['] post-termination infringement of the PAPA JOHN'S Marks®." (plfs' resp. at 10). Rezko did sign the owner agreement attached to plaintiffs' second amended complaint, including the guaranty provision in which Rezko guaranteed "personally and unconditionally ... the punctual payment when due of all sums, indebtedness and liabilities of every kind and nature that Franchisee may now or in the future owe to any member of Our Group ... not [to] exceed $300,000" (sec. am. cplt, exh. C, ¶3). While it is unclear whether Rezko signed the owner agreement in his personal or professional capacity, there are reasons to believe he signed in his personal capacity. He signed his name without following it by his corporate title. *Cf.* Sullivan v. Cox, 78 F.3d 322, 326 (7th Cir.1996) (Under Illinois law, '[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound.'"). Further, because a guaranty, by definition, is a third party promise to pay another's debt, it is unlikely that Papa John's would allow a corporation, through its agent Rezko, to guarantee the corporation's own debt. Viewing all inferences in favor of plaintiffs, we find that Rezko may have personally guaranteed the franchisees' debts and liabilities, up to $300,000, and therefore allow the claims against him to proceed.

Lanham Act claims

Defendants contend that plaintiffs failed to adequately plead a trademark infringement or unfair competition claim. In order to successfully state a claim for trademark infringement or unfair competition under the Lanham Act, plaintiffs must plead that (1) its mark is protectable, and (2) defendant's use of the mark is likely to cause confusion among consumers. Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir.2001); Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d 1264, 1266 (7th Cir.1989) ("To establish a case of unfair competition based on trademark infringement, a plaintiff must prove two elements: (1) validity of the mark in question; and (2) infringement"). Likelihood of confusion, the key to infringement and unfair competition, is generally measured by "(1) similarity of the marks; (2) similarity of the products or services in issue; (3) area and manner of concurrent use; (4) sophistication of consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendant to palm off its product as that of another." Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp., 80 F.Supp.2d 815, 879 (N.D.Ill.1999) (*citing* Forum Corp. of N. America v. Forum, Ltd., 903 F.2d 434, 439 (7th Cir.1990)).

There is no dispute that plaintiff has adequately plead the validity of the marks in question (sec. am. cplt., ¶¶15-17). Rather, defendants argue that plaintiffs' conclusory statements that (1) defendants used the marks and (2) such use was likely to cause consumer confusion are insufficient to state a claim. Pointing to the Seventh Circuit's statement that under a motion to dismiss standard "we are not obliged to accept as true conclusory statements of law or unsupported conclusions of fact," (McLeod v. Arrow Marine Transport, Inc., 258 F.3d 608, 614 (7th Cir.2001)), defendants argue that plaintiffs' second amended complaint must fail.

Plaintiffs' trademark infringement and unfair competition claims are based on (1)

defendants' continued use of plaintiffs' trademarks without permission and (2) defendants' use of a similar mark, "Papa Tony's," that has the likelihood of confusing customers. The first allegation is represented in the complaint with vague statements such as, "For more than two years, the Former Franchisees have continually operated their restaurants under Papa John's federal registered trademarks ..." (sec. am. cplt, ¶2), and "After May 3, 2004, the Former Franchisees nevertheless continued to operate the Franchised Restaurants using the PAPA JOHN'S Marks and Papa John's Registered Copyrights, including the proprietary Papa John's System, without having any contractual right or license to do so." (*Id.*, ¶38). The second allegation relies on such statements as, "While continuing to use the Papa John's Marks in certain aspects of the pizza restaurants, the Former Franchisees are now operating pizza restaurants from the same locations where Papa John's authorized them to operate the Franchised Restaurants but have renamed these restaurants 'Papa Tony's.' The likelihood of confusion, tarnishment and/or dilution is heightened by the fact that the businesses being operated are at the same locations as the Franchised Restaurants, are virtually identical in concept (pizza delivery and carry-out), and are being operated under a name that is confusingly similar to and/or evocative of the famous Papa John's Marks." (*Id.*, at ¶ 2).

We agree with defendants that plaintiffs' second amended complaint lacks factual support for its trademark infringement and unfair competition claims. We do not, however, agree that such failure is fatal to plaintiffs' complaint. The federal courts act under a notice pleading, not a fact pleading regime. Under that understanding, the Seventh Circuit has "held time and again ... there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions ... listed in Rule 9." Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir.2002). In just the last month, Judge Easterbrook, writing for the Seventh Circuit, reaffirmed the federal court's liberal pleading standard. Overturning the district court's

dismissal on the pleadings, Judge Easterbrook wrote, "the belief that complaints must lay out facts corresponding to every 'element' of a legal theory ... is a code-pleading approach, which the Federal Rules of Civil Procedure reject. Simpson v. Nickel, ___ F.3d ___, 2006 WL1585445, *1 (7th Cir. 2006). The law in this circuit is that "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts .... All that need to be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir.2002).

Plaintiffs have sufficiently put defendants on notice of their trademark infringement and unfair competition claims. By listing the trademarks that defendants allegedly infringed, noting the time frame (since May 3, 2004), indicating the similar mark ("Papa Tony's"), and the location of the infringement (formerly franchised restaurants in Illinois and Michigan), the plaintiffs sufficiently stated that defendants used plaintiffs' marks in a manner that may confuse the public or dilute the strength of the mark. Plaintiffs need not prove either defendants' use or likelihood of confusion now – both are questions of fact to be determined at a later stage.[2] See Triple Canopy, Inc. v. Moore, 2005 WL 1629768, *11 (N.D.Ill.2005) (plaintiff's allegations that defendants "used the Triple Canopy trademarks and Internet Domain names in a manner likely to 'cause confusion, or to cause mistake, or to deceive'" was sufficient to allege likelihood of confusion); McDonald's Corp. v. Gunvill, 441 F.Supp.71 (N.D.Ill.1977) (the allegation that defendants' sign "is causing and is likely to cause confusion

---

[2]Thus, defendants' arguments that "Papa Tony's" is not confusingly similar to "Papa John's" as a matter of law must fail. It is true that "use of a rival's mark that does not engender confusion about origin or quality is [] permissible (August Storck K.G. v. Nabisco, Inc., 59 F.3d 616, 618 (7th Cir.1995)), but such a determination should not be made on a motion to dismiss. Like the court in Triple Canopy, "[s]ince the ultimate test of [plaintiffs'] claim is whether there is likelihood of confusion by the consuming public, a question of fact which cannot be decided on a motion to dismiss, [we] decline[] any invitation to dismiss the claim on such basis at this time." 2005 WL 1629768 at *11. Claiming that "Papa Tony's" infringes may well be overreaching, but we cannot determine that now.

and mistake, as well as to deceive purchasers and the public," when taken with the rest of the complaint, "sufficiently states a claim under the federal statute proscribing trademark infringement").³ Plaintiffs' complaint, while conclusory, sufficiently places defendants on notice of the allegedly illegal conduct.

Plaintiffs also allege a Lanham Act dilution claim, contending that defendants' actions and use of inferior products has tarnished plaintiffs' reputation in the pizza making industry. Defined as the "lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of ... competition between the owner of the famous mark and other parties, or ... likelihood of confusion, mistake or deception" (15 U.S.C. § 1127), dilution is distinct from plaintiff's other Lanham Act claims because it does not require that use of plaintiffs' marks engender public confusion. *See* Planet Hollywood (Region IV), Inc., 80 F.Supp.2d at 894. In order to state a dilution claim under 15 U.S.C. § 1125(c), plaintiffs must plead "(1) its marks are famous; (2) [defendants are] making use of its marks in commerce; (3) [defendants'] use began after the marks became famous; and (4) [defendants'] use of the marks dilute the quality of the marks by diminishing the capacity of the marks to identify and distinguish goods and services." Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc., 88 F.Supp.2d 914, 925 (C.D.Ill.2000). Plaintiffs claim that their marks are famous (sec. am. cplt, ¶19), defendants are making use of such marks (*id.*, ¶¶ 2, 38, 39, 41), and defendants' use occurred after plaintiffs' marks became famous (*id.*, ¶¶ 15, 50). Plaintiffs' conclusory statement that defendants' actions have diluted the distinctive quality of their

---

³Although defendants' quoted-language from Juno Online Services v. Juno Lighting, Inc., 979 F.Supp.684, 691 (N.D.Ill.1997), is compelling, a closer look at Juno distinguishes it from the case at hand. In Juno, plaintiff's complaint admitted that defendant "does not presently intend to become a provider of ... interactive advertising services" and defendant was not using plaintiff's intellectual property "in connection with its own business." So although the Juno court found that plaintiff's complaint failed to assert a claim under Lanham Act §43(a), its rationale is inapplicable in this case. Plaintiffs' complaint clearly states that defendants are "continuing to use the Papa John's Marks in certain aspects of the pizza restaurants" that defendants are now operating as "Papa Tony's" (sec. am. cplt, ¶2).

marks (*id.*, ¶50) is explained by the following: "Because the Former Franchisees are no longer authorized to operate Papa John's Franchised Restaurants, they are unable to purchase Papa John's pizza dough. The Former Franchisees are therefore resorting to the use of unapproved pizza dough and other food items in continuing their operations. Papa John's is unable to ensure the quality of the products that consumers are currently purchasing from the Former Franchisees, and that the quality of the Former Franchisees' operations in general are consistent with the standards of the Papa John's franchise system and with the PAPA JOHN'S Trademark Image." (*Id.*, ¶38).

Although some courts have found that a junior user's use of a similar mark on a "cheap knock off" does not fit within the dilution tarnishment definition (<u>Clinique Laboratories, Inc. v. Dep Corp.</u>, 945 F.Supp.547, 562 (S.D.N.Y.1996)), other courts, including the Seventh Circuit, may disagree. See <u>Eli Lilly & Co. v. Natural Answers, Inc.</u>, 233 F.3d 456, 466 (7th Cir.2000) ("[d]ilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product"); <u>Hormel Foods Corp. v. Jim Henson Productions, Inc.</u>, 73 F.3d 497, 507 (2d.Cir.1996) ("[a] trademark may be tarnished when it is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods'"). As plaintiffs' complaint could possibly state a tarnishment claim, we decline to dismiss it at this stage.

<u>Copyright Claim</u>

In order to successfully state a copyright claim, plaintiffs must plead (1) ownership of a copyright and (2) unauthorized copying of the elements of the work that are original. <u>Monotype Imaging, Inc. v. Bitstream, Inc.</u>, 376 F.Supp.2d 877, 884 (N.D.Ill.2005); <u>Glovroma,</u>

Inc. v. Maljack Productions, Inc., 71 F.Supp.2d 846, 850 (N.D.Ill.1999). Again, defendants do not dispute plaintiffs' ownership of valid copyrights. Rather, defendants insist that plaintiffs have failed to sufficiently allege the second prong, that defendants made "unauthorized copies or derivative works based on registered materials" (defs' reply at 6). Defendants contend that plaintiffs have only alleged defendants' *use* of the copyrighted materials, which is not a violation of the Copyright Act.

Courts have generally read the "copying" requirement broadly – as "'shorthand for the infringing of any of the copyright owner's [six] exclusive rights' set forth in Section 106 of the Copyright Act." NIMMER ON COPYRIGHT, §8.02[B]. Section 106 assigns the following exclusive rights to a copyright owner:

> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. §106. Where direct evidence of copying is unavailable, an inference of copying can be garnered from proof of access to the copyrighted work and a substantially similar work. Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir.1982), *superceded by statute on other grounds as recognized in* Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1429 (7th Cir.1985).

Plaintiffs allege that "[b]y making unauthorized use of the Papa John's Registered Copyrights, Rezko and the Former Franchisees are committing copyright infringement in violation of the exclusive rights that Papa John's owns pursuant to the Copyright Act, 17

U.S.C. ¶106." (sec. am. cplt, ¶52). It is unclear what plaintiffs mean by "making unauthorized use." If plaintiffs are suggesting that defendants are continuing to use the ideas found in plaintiffs' copyrighted materials, such use is not a violation of the Copyright Act. The Act undeniably protects only "'the expression of ideas, not the ideas themselves.'" Theotokatos v. Sara Lee Personal Products, 971 F.Supp. 332, 341 (N.D.Ill.1997). The statute explains, "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. §102(b). If plaintiffs are concerned with defendants' alleged failure to return the copyrighted material to Papa John's, such a grievance belongs within the contract claim, not a copyright claim. If, however, plaintiffs are attempting to allege that defendants have copied, disseminated, or prepared derivative works based on Papa John's copyrighted works, they may have a sustainable copyright violation claim. Plaintiffs' second amended complaint fails to clarify what is meant by "making unauthorized use." We will not read a claim that is not there, and therefore, we find that the complaint does not allege infringement of plaintiffs' exclusive rights under the Copyright Act. We dismiss plaintiffs' copyright claim with leave to re-plead.

State Law Claims

Plaintiffs' second amended complaint alleges violation of the Kentucky Uniform Trade Secrets Act, Ky.Rev.Stat.Ann. §§365.880-365.900 ("KUTSA"). In their motion to dismiss, defendants contend that plaintiffs' Kentucky statutory claim must be dismissed because the alleged misappropriation of trade secrets occurred in Illinois and Michigan. Defendants further contend that plaintiffs failed to state a claim under either KUTSA or the Illinois Trade Secrets Act, 765 ILCS §1065/1 ("ITSA"). Because we find that plaintiffs sufficiently alleged

a claim under either KUTSA or ITSA, we need not make a choice-of-law determination at this point.

To succeed on a claim under the Illinois Trade Secrets Act, plaintiffs must plead and prove that "(1) the information was a trade secret, (2) defendant[s] misappropriated it, and (3) defendant[s] used the information in its business." Kim v. Dawn Food Products, Inc., 2006 WL 695257, *3 (N.D.Ill.2006). *See also* Systems America, Inc. v. Providential Bancorp, Ltd., 2006 WL 463314, *5 (N.D.Ill.2006); Arcor, Inc. v. Haas, 842 N.E.2d 265, 269 (Ill.App.Ct.2005). To succeed on a claim under KUTSA, plaintiffs must plead and prove (1) information they seek to protect qualifies as a protectable trade secret and (2) that protected information has been misappropriated. BDT Products, Inc. v. Lexmark Intern., Inc., 274 F.Supp.2d 880, 890 (E.D.Ky.2003). To satisfy KUTSA's first prong, plaintiffs must put forth evidence showing that "'the information (1) has independent economic value, (2) is not readily ascertainable by proper means, and (3) was the subject of reasonable efforts to maintain its secrecy.'" *Id.* Defendants focus their criticism on the argument that the complaint "fails to allege facts showing which Defendant allegedly misappropriated which of Plaintiffs' trade secrets and at what time."

As is a theme in their complaint, plaintiffs' trade secret misappropriation allegations are vague and conclusory. They rest specifically on the claim that "[t]he 'Papa John's System' includes information, formulae, patterns, compilations, programs, data, devices, methods, techniques and processes that derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use." (sec. am. cplt., ¶58). Because "Papa John's undertakes reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including the Papa John's System," (*id.*), plaintiffs contend that defendants' use

of that system violated plaintiffs' rights under Illinois and Kentucky law.

Defendants' argument that plaintiffs' allegations are insufficient is based primarily on the pleading requirements set forth in Liebert Corp. v. Mazur, 827 N.E.2d 909, 926 (Ill.App.Ct.2005) (plaintiffs "must show they took affirmative measures to prevent others from acquiring or using the information"). While it is true that plaintiffs have failed to plead any measures they took to prevent the use of their trade secrets, this case is distinguishable from Liebert on two fronts. First, the Liebert court was assessing a motion for preliminary injunction, wherein plaintiff was required to show a "clearly ascertainable right." Although plaintiffs' complaint does request preliminary and permanent injunction, at this motion-to-dismiss stage the hurdle is much lower. Second, the Liebert court, as an Illinois state court, was operating under a fact pleading standard. Our federal notice pleading standing is a much lower pleading bar. *See* Systems America, Inc., 2006 WL 463314 at *5 (minimal trade secret allegations satisfy the liberal federal civil procedure pleading requirements); AutoMed Technologies, Inc. v. Eller, 160 F.Supp.2d 915, 920-921 (N.D.Ill.2001); MJ & Partners Restaurant Ltd. Partnership v. Zadikoff, 10 F.Supp.2d 922, 933 (N.D.Ill.1998) (even where plaintiffs had not alleged reasonable efforts to maintain confidentiality, allowed ITSA claim where plaintiffs alleged that defendant had "received trade secrets in the form of information regarding suppliers, sales, employee history, gross profits, revenues, expenses, financing agreements, investor lists, marketing plans, and special customer relationships").

The Seventh Circuit has stated that "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir.1992). This court, however, has recognized that the details of trade secrets need not be disclosed in pleading "'for the simple reason that such a requirement

would result in public disclosure of the purported trade secrets.'" AutoMed Technologies, Inc., 160 F.Supp.2d at 921 (*citing* Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F.Supp. 635, 636 (D.Del.1991)). In *Automed*, we allowed plaintiff's complaint – alleging trade secret misappropriation in "generic references to [] three research projects" and specifying only one software program and source code – to continue, stating that "plaintiff will ultimately need to identify which specific designs, software or research defendants allegedly misappropriated. But for withstanding a motion to dismiss, the amended complaint suffices." *Id.*, at 921. We face a similar complaint here, unclear which trade secrets of the "Papa John's System" have allegedly been misappropriated. Because the allegations satisfy the liberal pleading standards, however, we allow plaintiffs' state law trade secrets misappropriation claim to continue.[4]

## CONCLUSION

For the reasons stated above, we deny defendants' motion to dismiss. We grant in part defendants' supplemental motion to dismiss. Plaintiffs' second amended complaint is dismissed in part with leave to amend.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 29, 2006.

---

[4] As we grant plaintiffs leave to amend with regard to their copyright claim, we also encourage plaintiffs to amend their state law claims to specify the state statute under which they are proceeding and further identify the allegedly misappropriated trade secrets.